# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3882

_____

United States of America

*Plaintiff - Appellee*

v.

Victor Hugo Maldonado

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: June 8, 2017
Filed: July 25, 2017

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Victor Maldonado pleaded guilty to possession of a firearm by a prohibited person and was sentenced to 84 months' imprisonment. He now appeals his sentence, arguing that the district court[1] committed procedural error in determining his advisory

_____

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

sentencing guidelines range by finding that two of his prior convictions qualified as "controlled substance offenses" and by applying an enhancement for possessing a firearm in connection with another felony offense. For the reasons below, we affirm.

I.

On October 7, 2015, police officers in Sioux City, Iowa stopped Maldonado's vehicle and discovered a .40 caliber handgun, a bag containing marijuana, and a methamphetamine pipe. Maldonado, a felon, was arrested and charged with possession of a firearm by a prohibited person. *See* 18 U.S.C. §§ 922(g)(1) & (g)(3), 924(a)(2). Maldonado pleaded guilty to this offense and proceeded to sentencing.

Prior to sentencing, the probation office prepared a Presentence Investigation Report ("PSR"). The PSR concluded that Maldonado had sustained two prior convictions for a "controlled substance offense" as defined in United States Sentencing Guideline ("U.S.S.G.") § 4B1.2(b). Specifically, the PSR cited a 2010 Nebraska conviction for "Criminal Attempt to Conspir[e] to Distribute Methamphetamine" and a 2013 Iowa conviction for "Possession with Intent to Deliver a Controlled Substance – Marijuana." *See* Neb. Rev. Stat. §§ 28-201, 28-202, 28-416; Iowa Code. Ann. § 124.401. As a result, the PSR recommended a base offense level of 24. *See* U.S.S.G. § 2K2.1(a)(2). The PSR also recommended a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Maldonado possessed the firearm "in connection with another felony offense," namely, carrying weapons in violation of Iowa Code Section 724.4(1). Maldonado objected to each of these recommendations, but the district court overruled both of his objections. Hence, the court concluded that Maldonado's base offense level was 24 and calculated his total offense level as 25 after applying the four-level enhancement and a three-level reduction for acceptance of responsibility.

As such, the court initially determined that Maldonado's advisory sentencing guidelines range was 110 to 120 months' imprisonment, based on a total offense level of 25, a criminal history category of VI, and a statutory maximum of 120 months, *see* 18 U.S.C. § 924(a)(2). Nevertheless, the district court granted Maldonado a downward variance because of its belief that the four-level enhancement for possessing a firearm in connection with another felony offense was "greater than necessary to accomplish all applicable sentencing purposes" where the "only other felony offense involves carrying weapons under Iowa law." On that basis, the court decided to "vary downward as if the enhancement was only one level instead of four levels." As a result, the court recalculated Maldonado's total offense level as 22 and his advisory guidelines range as 84 to 105 months. The court then sentenced Maldonado to 84 months' imprisonment. Maldonado now appeals, arguing that the district court committed procedural error by overruling each of his two objections and thereby miscalculating his advisory sentencing guidelines range.

## II.

"When reviewing a defendant's sentence, we must ensure that the district court committed no significant procedural error, including failing to calculate (or improperly calculating) the Guidelines range." *United States v. Hagen*, 641 F.3d 268, 270 (8th Cir. 2011) (quotation omitted). In reviewing for procedural error, "[w]e review the district court's construction and application of the sentencing guidelines *de novo* and its factual findings for clear error." *Id.*

Maldonado argues that the district court committed procedural error in two ways. First, he argues that the district court erroneously concluded that his Iowa and Nebraska convictions each qualify as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). Second, he argues that the court erroneously applied a four-level enhancement for possession of a firearm "in connection with another felony offense" under U.S.S.G. § 2K2.1(b)(6)(B). We address each argument in turn.

-3-

A.

U.S.S.G. § 2K2.1(a)(2) provides for a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.2(b) defines a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Application Note 1 to § 4B1.2 explains that "controlled substance offenses also include 'aiding and abetting, conspiring, and attempting to commit such offenses.'"

"To determine whether a prior conviction qualifies as a controlled substance offense, the court must apply the 'categorical approach' . . . ." *United States v. Robinson*, 639 F.3d 489, 495 (8th Cir. 2011) (citations omitted). "Under this approach, we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding [controlled substance offense]." *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1125 (8th Cir. 2013) (quotation omitted). To determine whether the state statute categorically fits within the generic federal definition, "we must presume that the conviction rested upon nothing more than the least of the acts proscribed by the state law and then determine whether even those acts are encompassed by the generic federal offense." *Id.* (quotation omitted).

If a state statute is broader than the generic federal definition, we must determine whether the statute is "divisible," meaning that it "comprises multiple,

-4-

alternative versions of the crime." *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013). If a statute is divisible, courts may apply the "modified categorical approach." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). "Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* "The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.*

The modified categorical approach may only be applied to statutory offenses listing alternative "elements," rather than alternative "means." *Id.* at 2253-54. "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Id.* at 2248 (quotation omitted). "Means," in contrast, "need neither be found by a jury nor admitted by a defendant." *Id.*

Here, Maldonado's 2013 Iowa conviction was for a violation of Iowa Code § 124.401, which states:

> Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit substance, a simulated controlled substance, or an imitation controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance, a counterfeit substance, a simulated controlled substance, or an imitation controlled substance.

Iowa Code Ann. § 124.401(1). His 2010 Nebraska conviction was for an attempt to conspire to violate Section 28-416 of the Nebraska Revised Statues, which states:

> [I]t shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance; or (b) to create, distribute, or possess with intent to distribute a counterfeit controlled substance.

Neb. Rev. Stat. § 28-416(1); *see also id.* § 28-201(1) (defining criminal attempt); *id.* § 28-202 (defining conspiracy).

As a preliminary matter, we note that the above portions of each statute list offenses in the alternative, such as "manufacture, distribute, deliver, dispense, or possess with intent," Neb. Rev. Stat. § 28-416(1), and that each statute separately defines these offenses elsewhere, *see* Neb. Rev. Stat. § 28-401(8), (9), (12), (14); Iowa Code Ann. § 124.101(7), (9), (11), (18). Because these portions of each statute "list elements in the alternative, and thereby define multiple crimes," these portions are divisible. *See Mathis*, 136 S. Ct. at 2249; *see also United States v. Teran-Salas*, 767 F.3d 453, 459 (5th Cir. 2014) ("Because § 481.112(a) criminalizes discrete acts—manufacturing, delivering, and possessing with intent to deliver—it is divisible."). Hence, we apply the modified categorical approach to these portions and look to state-court documents "to identify, from among several alternatives, the crime of conviction so that [we] can compare it to the generic offense." *Descamps*, 133 S. Ct. at 2285; *see also Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013) (analyzing portion of a Georgia statue making it a crime to "possess, have under [one's] control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana," and looking to the defendant's plea agreement to determine that he "was convicted of the last of these offenses"). Here, the relevant state-court documents reveal that Maldonado was convicted of an attempt to commit "conspiracy to distribute" methamphetamine in Nebraska and "possession

with intent to deliver" marijuana in Iowa.[2] Thus, we limit our analysis to the statutory language related to these particular offenses, and we ask whether a defendant may be convicted of either of these offenses for conduct that does not fit within U.S.S.G. § 4B1.2(b).

Maldonado does not contest that the above portions of each statute are divisible or that we should focus only on these offenses. Rather, he argues that his Nebraska and Iowa convictions do not qualify as controlled substance offenses because the relevant statutory definitions—"distribute" and "deliver"—sweep more broadly than the generic federal offense. Specifically, he contends that these definitions encompass "a mere offer to sell drugs," whereas the generic federal definition does not. He further contends that the definitional portions of each statute are indivisible and thus the modified categorical approach does not apply to them.

To show that the federal definition does not encompass a mere offer to sell drugs, Maldonado points to the Second Circuit's decision in *United States v. Savage*, which reasoned that a "mere offer to sell" does not fit within the federal definition because "[a]n offer to sell can be fraudulent . . . in the sense that the person offering . . . the drug does not have the *intent* to distribute or sell the item." *See* 542 F.3d 959, 965 (2d Cir. 2008). Maldonado also cites the Fifth Circuit's decision in *United States v. Hinkle*, which noted that "an offer to sell does not constitute a 'controlled substance offense' within the meaning of the Guidelines." *See* 832 F.3d 569, 571 (5th Cir. 2016). There, the court concluded that the defendant's prior conviction for delivery of heroin did not qualify as a controlled substance offense because the Texas statute's

---

[2]In addition, Maldonado's Nebraska conviction was a class II felony, *see* Neb. Rev. Stat. §§ 28-201(1) & (4)(a), 28-202(4), 28-416(1) & (10)(c), and his Iowa conviction was a class D felony, *see* Iowa Code. Ann. §§ 124.401(1)(d), 902.9(1)(e). As such, they both satisfy the requirement that a controlled substance offense be "punishable by imprisonment for a term exceeding one year." *See* U.S.S.G. § 4B1.2(b).

definition of the term "deliver" expressly included "offering to sell a controlled substance" and because this definitional portion of the statute was indivisible. *See id.* at 572, 576-77. However, even if Maldonado is correct that the federal definition does not encompass mere offers to sell, he fails to show that the definitions of "distribute" and "deliver" in the Nebraska and Iowa statutes encompass such conduct, as the Texas statute did in *Hinkle*.

Because Maldonado was convicted of an attempt to conspire to "distribute" methamphetamine in Nebraska and of possession with intent to "deliver" marijuana in Iowa, we analyze the definitions of "distribute" in the Nebraska statute and "deliver" in the Iowa statute. The Nebraska statute defines "distribute" as "to deliver other than by administering or dispensing a controlled substance," and it further defines "deliver" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Neb. Rev. Stat. § 28-401(9), (12). The Iowa statute's definition of "deliver" is identical to that of the Nebraska statute. *See* Iowa Code Ann. § 124.101(7). Thus, unlike the definition of "deliver" in *Hinkle*, neither statute here expressly states that it encompasses "offering to sell a controlled substance." *See* 832 F.3d at 572.

Nevertheless, Maldonado argues that the term "deliver" in both statutes—and by extension "distribute" in the Nebraska statute—"could be construed to cover conduct akin to a mere offer to sell drugs." However, whether a term "could be construed" to encompass such conduct is not the correct standard. As we recently reiterated, "[t]he categorical approach requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Fletcher v. United States*, 858 F.3d 501, 507 (8th Cir. 2017) (quotation omitted). And, "[i]n order to show that realistic probability, an offender must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* (quotation and alterations omitted). Maldonado fails to point to any case where

-8-

a person was convicted under the Nebraska or Iowa statutes for a mere offer to sell drugs.

Maldonado cites two cases from Nebraska and two from Iowa to support his argument, but each one found that the defendant could be convicted of distribution or delivery because he was an aider and abettor—not because of a mere offer to sell. *See State v. Salas*, 436 N.W.2d 547, 550-51 (Neb. 1989) (holding that defendant could be convicted of aiding and abetting delivery of cocaine because "[t]he defendant participated in the crime when he accepted without protest the money paid for the cocaine sold by his ex-wife"); *State v. McKimmey* 634 N.W.2d 817, 822 (Neb. App. 2001) (holding that defendant could be convicted of aiding and abetting distribution and delivery of methamphetamine because the defendant "actively assist[ed] and encourag[ed] [the supplier's] distribution and delivery" (quotation omitted)); *State v. Allen* 633 N.W.2d 752, 753, 757 (Iowa 2001) (holding that defendant could be convicted of aiding and abetting delivery of cocaine because he got in the officers' car and took them to two different possible sources before finding cocaine to buy, thereby "plainly facilitat[ing] the transfer"); *State v. Brown*, 466 N.W.2d 702, 703-04 (Iowa App. 1990) (holding that defendant could be convicted of aiding and abetting delivery of cocaine because he flagged down undercover officers, used hand signals to ask what quantity of cocaine they wanted, got in the officers' police car, showed them small flakes of cocaine, and offered to take the officers to his supplier to get a larger rock of cocaine). In each of these cases, the person aided or abetted had "the intent to distribute or sell the item," *see Savage*, 542 F.3d at 965, unlike the type of "mere offer to sell" that Maldonado contends does not fit within the federal definition. Thus, none of these cases "in fact did apply the statute in the special (nongeneric) manner for which [Maldonado] argues." *See Fletcher*, 858 F.3d at 507. They did not construe the statutory definitions of "deliver" to encompass mere offers to sell.

We note, of course, that the term "deliver" does not appear in U.S.S.G. § 4B1.2(b). Nevertheless, § 4B1.2(b) refers to both "distribution" and "dispensing," and Maldonado fails to show a realistic probability that a defendant would be convicted of "conspiracy to distribute" in Nebraska or "possession with intent to deliver" in Iowa for conduct that would fall outside the generic definitions of "distribution" or "dispensing." *See Teran-Salas*, 767 F.3d at 460 (holding that defendant's conviction for possession of cocaine with intent to deliver qualified as a "drug trafficking offense" under the guidelines because the defendant did "not establish a realistic probability that Texas would prosecute his crime under an 'administering' theory in a way that does not also constitute either 'dispensing' or 'distributing' under the federal sentencing guidelines"). Indeed, other than mere offers to sell, Maldonado provides no examples of such conduct, and he points to no cases in which Nebraska or Iowa applied their statutes to such conduct. Thus, we cannot conclude that the statutory definitions of "deliver" sweep more broadly than the generic federal definition.

Instead, we conclude that Maldonado's state convictions categorically fit within the generic federal definition. As a result, we have no need to determine whether the statutory definitions of "deliver" are divisible or to apply the modified categorical approach to them. *Cf. Hinkle*, 832 F.3d at 572-73, 576 (concluding that portion of statute defining "delivery" was indivisible). Each of Maldonado's prior convictions categorically qualify as a controlled substance offense, and thus the district court did not commit procedural error in overruling Maldonado's objection.

B.

U.S.S.G. § 2K2.1(b)(6) provides that "[i]f the defendant . . . [u]sed or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." The Commentary to § 2K2.1 defines "another felony offense" as "any Federal, state, or local offense, other than the explosive or firearms possession or

-10-

trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Here, the district court applied § 2K2.1(b)(6)'s four-level enhancement because Maldonado committed the instant offense in connection with the crime of carrying weapons, an offense proscribed by Iowa Code § 724.4(1). This statute provides that "a person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor." Iowa Code Ann. § 724.4(1). In Iowa, an aggravated misdemeanor is punishable by imprisonment for a term of up to two years. *Id.* § 903.1(2).

Maldonado does not contest that he violated Iowa Code Ann. § 724.4(1). Rather, he argues that the Iowa offense is not properly considered "another felony offense" because he could not commit the instant federal offense without also committing the Iowa offense, as in *United States v. Lindquist. See* 421 F.3d 751, 756 (8th Cir. 2005) ("It would be unreasonable . . . to allow the 'additional felony' to be an offense that the defendant has to commit, in every case, in order to commit the underlying offense." (quotation and alteration omitted)), *abrogated on other grounds as recognized in United States v. Steward*, 598 F.3d 960, 962-63 (8th Cir. 2010).

However, we have rejected this argument as applied to Iowa Code § 724.4(1) in *United States v. Walker*, 771 F.3d 449, 452-53 (8th Cir. 2014), *cert denied*, 135 S. Ct. 1538 (2015). There, we held that the district court did not err by applying § 2K2.1(b)(6)'s four-level enhancement to a defendant convicted of violating 18 U.S.C. 922(g) and who possessed the firearm in connection with the Iowa crime of carrying weapons. *Id.* We noted that "Iowa Code § 724.4(1), unlike 18 U.S.C. § 922(g), requires proof that the defendant went armed 'with a dangerous weapon *concealed on or about the person*,' or went armed with a handgun '*within the limits of any city*,' or '*knowingly* carrie[d] or transport[ed] [a handgun] in a vehicle.'" *Id.*

-11-

at 453. Thus, we concluded that "applying the four-level enhancement in U.S.S.G. § 2K2.1(b)(6) does not implicate the 'double counting' concerns underlying our decision in *Lindquist*." *Id.* The district court properly recognized that it was bound by this precedent. As in *Walker*, Maldonado "was not doomed to automatically commit the additional felony when he violated 18 U.S.C. § 922(g) by possessing a firearm as a felon." *See id.* at 452-53. Therefore, the court did not commit procedural error by applying the four-level enhancement for possessing the firearm in connection with the Iowa offense of carrying weapons.

## III.

For the reasons stated above, we affirm the district court's sentence.

_____