# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3159
_____

United States of America

*Plaintiff - Appellee*

v.

Demetrius Elishakim Jefferson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: June 19, 2020
Filed: September 17, 2020

_____

Before LOKEN and GRASZ, Circuit Judges, and CLARK,* District Judge.

_____

LOKEN, Circuit Judge.

A jury convicted Demetrius Jefferson of conspiracy to distribute marijuana ("Count 1"); possession with intent to distribute marijuana ("Count 2"); possessing a firearm in furtherance of a drug trafficking crime ("Count 5"); and being a felon in

_____

*The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri, sitting by designation.

possession of a firearm ("Count 6"). <u>See</u> 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 846. On appeal, Jefferson argues there was insufficient evidence to convict him of Counts 2, 5, and 6; the district court[1] erred in denying his motion for a new trial of all four counts; and the court committed three errors in determining his advisory guidelines sentencing range. We affirm.

## I. Sufficiency of the Evidence.

We briefly review the trial evidence in the light most favorable to the jury verdict, accepting all inferences in favor of the government. <u>United States v. Hernandez</u>, 569 F.3d 893, 896 (8th Cir. 2009) (standard of review), <u>cert. denied</u>, 559 U.S. 915 (2010). Des Moines police executed a warrant to search a residence where they had probable cause to suspect marijuana distribution, and where a gold GMC Yukon registered to Jefferson had been seen. Jefferson, his girlfriend, Wendy Stark, and their infant child were in the home. In the bedroom, officers found a loaded .22-caliber handgun on a night stand; eighty grams of loose and baggied marijuana in two mason jars and in a blue tote; plastic sandwich bags; and digital scales. Each baggie contained 3.5 grams of marijuana, a quantity commonly used for individual sales. Officers also found articles of male clothing, letters addressed to Jefferson, and a pay stub for Jefferson. In another room called the "smoke room," they found 270 grams of marijuana, plastic sandwich bags, .22-caliber ammunition, .40-caliber ammunition, a digital scale, and an empty box for the .22-caliber handgun. The government introduced photographs of the rooms and their contents as the officers found them.

Called as a witness by the government, Wendy Stark testified that Jefferson obtained four to six pounds of marijuana from a cousin each month. Jefferson taught her to package the marijuana in plastic sandwich bags for resale, providing the weight

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

for each package and setting the price. Stark delivered marijuana to Jefferson's customers in a designated parking lot and at the home, occasionally selling to her co-workers. Jefferson used a bank account in Stark's name to deposit proceeds and to withdraw funds for monthly purchases. The government introduced text messages that corroborated this testimony, directing Stark to prepare or deliver packages, check on the drug supply, charge a certain price, or withdraw money.

Stark testified that Jefferson kept most of the drug supply in the smoke room. He instructed Stark to install a lock on the door to which only she and Jefferson had a key. She purchased the .22-caliber handgun at Jefferson's behest for protection at home. For personal protection, Jefferson carried a .40-caliber firearm while conducting drug transactions. On the morning after Jefferson was robbed of the .40-caliber firearm, he texted, "I got robbed!! I need you to get 45 shells and 9 and .380." Stark complied that morning. Jefferson subsequently took the .22-caliber handgun found on the night stand with him when distributing. Stark testified that Jefferson carried the .22-caliber firearm while conducting drug transactions the night before the warrant search; he laid it on the night stand and fell asleep when he returned home. Stark regularly acquired ammunition for Jefferson including the .22- and .40-caliber bullets found in the smoke room. Although she never saw a .45-caliber, a 9-millimeter, or a .380-caliber firearm at the home, Jefferson displayed various guns in their bedroom. Text messages confirmed that Stark purchased bullets for Jefferson for guns not found in their home.

Jefferson argues the evidence was insufficient to convict him of Count 2 -- marijuana distribution. The government's case was based on Stark's testimony, he argues, and it "should be given no weight" because she was a drug user with prior drug convictions who admitted to testifying to receive a lenient sentence in future proceedings and to improve her chance of gaining custody of her children. We reject this argument for multiple reasons. First, the drugs, drug paraphernalia, gun, and ammunition found in a home where Jefferson slept, kept clothes, received mail, and

registered his car corroborated Stark's testimony and provided independent evidence Jefferson possessed and distributed marijuana.  See United States v. Thompson, 881 F.3d 629, 632-33 (8th Cir. 2018).  Second, even without this corroborating evidence, "[w]e have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses." United States v. Anwar, 880 F.3d 958, 967 (8th Cir. 2018) (quotation omitted).  Third, it is axiomatic that "witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact."  United States v. Van, 543 F.3d 963, 965 (8th Cir. 2008) (quotation omitted). The jury rejected Jefferson's argument it should find Stark not credible for the reasons he now urges us to adopt on appeal.  We will not second-guess the jury's credibility finding.

Jefferson argues the evidence was insufficient to convict him of Counts 5 and 6, the firearm counts, because Stark's testimony that he possessed the .22-caliber handgun found on the night stand was not credible, there is no fingerprint or other tangible evidence that he possessed the firearm or ammunition, and Stark's testimony is not sufficient to support the jury's finding that he possessed the .22-caliber ammunition. We disagree. Stark -- whose credibility we must accept -- testified that Jefferson started carrying the .22-caliber handgun during drug transactions after his .40-caliber firearm was stolen, carried that firearm the night before the warrant search, and placed it on the night stand where it was found.  Ammunition for the two firearms was found in the smoke room.  A reasonable jury could find that Jefferson possessed the .22-caliber firearm and the ammunition in furtherance of a drug trafficking crime.  See United States v. Waln, 916 F.3d 1113, 1116 (8th Cir. 2019). Whether Stark initially purchased these items is irrelevant.  Stark's testimony established, at a minimum, that Jefferson had actual and constructive joint possession of the .22-caliber firearm and the ammunition.  See United States v. Williams, 512 F.3d 1040, 1044 (8th Cir.), cert. denied. 553 U.S. 1099 (2008).  "[F]orensic evidence is not necessary for a firearms conviction."  United States v. Porter, 687 F.3d 918, 921 (8th Cir. 2012) (quotation omitted).

## II. The Motion for New Trial.

The second issue presented in Jefferson's brief on appeal is that the district court "erred in denying Mr. Jefferson's motion for new trial." In the argument section of the brief, however, he advanced numerous claims of alleged evidentiary and procedural trial errors as reasons we should order a new trial. Many of these issues are raised for the first time on appeal; none were included in the statement of issues presented for review, as Rule 28(a)(5) of the Federal Rules of Appellate Procedure requires. "We decline to consider an issue that has not been properly presented to either court." United States v. Mejia-Perez, 635 F.3d 351, 354 (8th Cir. 2011). Accordingly, we will consider only the three reasons for new trial that Jefferson presented both in his motion for new trial to the district court and his opening brief to this court. The others were waived. We review the denial of a motion for a new trial "for a clear abuse of discretion, a rigorous standard." Anwar, 880 F.3d at 969 (quotation omitted).

First, Jefferson contends a new trial is required because the government in closing argument used a trial exhibit in violation of Rule 404(b) of the Federal Rules of Evidence. In his motion for new trial, Jefferson argued that the government improperly used Jefferson's text message to Stark that referred to "getting smacked with a gun" as evidence he possessed the gun and ammunition at issue. On appeal, he makes an entirely different Rule 404(b) argument -- the government improperly used this text message to convict him based on his propensity to possess firearms when it argued, "The defendant and his crimes were real. His drug dealing was real. His gun carrying was real. He was not playing a game, and you should convict him." Assuming this contention was preserved for appeal, it is without merit. The government stayed within the permissible parameters of Rule 404(b) by using the text message to demonstrate Jefferson considered the drug trade dangerous and therefore had a motive to possess the firearm and ammunition. See Fed. R. Evid. 404(b)(2); United States v. Green-Bowman, 816 F.3d 958, 965 (8th Cir. 2016). Moreover, Jury

Instruction 18 "sufficiently cured any potential prejudice" by instructing jurors not to convict Jefferson "simply because you believe he may have committed similar acts in the past." United States v. Morris, 817 F.3d 1116, 1122 (8th Cir. 2016).

Second, Jefferson argues a new trial is warranted because forensic evidence testimony by the government's expert witnesses -- Ryan Petruccelli and Benjamin Campbell -- was irrelevant, prejudicial, and not helpful to the jury. See Fed. R. Evid. 402, 403, and 702. Petruccelli testified he did not find Jefferson's DNA on the .22-caliber firearm. Campbell testified he did not find fingerprints on it. Both explained that, in their experience, it is rare to find forensic evidence on firearms or ammunition, testimony consistent with that of experts in other firearm possession cases. See Porter, 687 F.3d at 921. Jefferson does not discredit their qualifications nor identify unfair prejudice. Jefferson's emphasis during trial on the lack of forensic evidence made the testimony relevant and helpful to the jury. The district court did not abuse its discretion in admitting it.

Third, Jefferson argues it was unduly prejudicial to admit into evidence over his objection a photograph of him sitting handcuffed on a sofa during the warrant search. See Fed. R. Evid. 402, 403. The photograph was relevant to proving that Jefferson was at the home when officers executed the search warrant, a fact to which Jefferson refused to stipulate. In identifying the photograph, a Des Moines police officer testified it is "standard practice to secure individuals during a search warrant." The district court immediately gave the jury a cautionary instruction to minimize prejudice: "The mere fact that for officer safety the defendant was handcuffed isn't evidence of anything, other than it's a plan for officer safety." Admission of the photograph was not an abuse of discretion and does not warrant a new trial.

# III. Sentencing Issues.

At sentencing, the district court determined that Jefferson had three predicate offenses that make him a "career offender." See USSG § 4B1.1(a). In reaching Jefferson's total offense level of 24, the district court imposed a two-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, and a two-level increase for being an organizer or leader of a criminal activity. See USSG §§ 2D1.1(b)(12), 3B1.1(c). These enhancements resulted in an advisory guidelines sentencing range of 360 months to life imprisonment. Varying downward, the district court sentenced Jefferson to 210 months. On appeal, Jefferson challenges these enhancements. We review the career offender designation *de novo*. See United States v. Maldonado, 864 F.3d 893, 897 (8th Cir. 2017), cert. denied, 138 S. Ct. 702 (2018). We review the court's findings supporting the premises and leader enhancements for clear error. See United States v. Miller, 698 F.3d 699, 705 (8th Cir. 2012) (premises), cert. denied, 568 U.S. 1182 (2013); United States v. Behera, 223 F.3d 797, 804 (8th Cir. 2000) (leader), cert. denied, 531 U.S. 1181 (2001).

**A. Career Offender:** Jefferson is a career offender if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). The district court determined that his 2001 Wisconsin conviction for robbery with use of force was a predicate crime of violence conviction, and his 2001 Wisconsin conviction for possessing with intent to distribute cocaine and 2008 federal conviction for attempting to possess with the intent to distribute marijuana were predicate controlled substance convictions. Jefferson challenges all three determinations. Since two predicate felony convictions are sufficient for career offender status, we will consider only the two controlled substance offenses.

To determine whether a prior state conviction is a controlled substance offense, we apply the categorical approach, asking whether the least culpable conduct

sufficient for conviction under the state law is "encompassed by the generic federal offense." Maldonado, 864 F.3d at 897 (quotation omitted). Jefferson was convicted of violating Wis. Stat. § 961.41(1m)(cm)(1) (2000). Section 961.41(1m) makes it "unlawful for any person to possess, with intent to manufacture, distribute, or deliver, a controlled substance or a controlled substance analog." Jefferson argues this statute is categorically overbroad because it includes "deliver" in its offense conduct, whereas USSG § 4B1.2(b) defines "controlled substance offense" as an offense "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." The Wisconsin statute defines "deliver" as "the actual, constructive or attempted transfer from one person to another of a controlled substance or controlled substance analog, whether or not there is any agency relationship." Wis. Stat. § 961.01(6).

In United States v. Harper, the Seventh Circuit concluded that the Wisconsin definition of "deliver" is consistent with the generic federal definition because "[t]ransfer is just another word for distribute or dispense." 756 F. App'x 656, 658 (7th Cir. 2019) (quotation omitted). This commonsense reading is consistent with our precedents. In Maldonado, we rejected the contention that Iowa and Nebraska drug distribution offenses were categorically overbroad because they included "deliver" in their offense conduct. See 864 F.3d at 899-90. The Iowa and Nebraska statutes at issue had the same definition of "deliver" as the Wisconsin Statute. Compare Iowa Code § 124.101(7) and Neb. Rev. Stat. § 28-401(12), with Wis. Stat. § 961.01(6). In United States v. Thomas, we reached the same conclusion regarding a Missouri controlled substance offense, concluding that, "[u]nder Missouri law, 'deliver' and 'distribute' are synonymous." 886 F.3d 1274, 1275 (8th Cir. 2018). As we concluded in Maldonado, 864 F.3d at 899, Jefferson relies on a distinguishable Fifth Circuit case because the Texas statute there at issue, unlike the Wisconsin statute,

-8-

could be violated "by proving only an offer to sell." United States v. Hinkle, 832 F.3d 569, 571, 576-77 (5th Cir. 2016).

Jefferson's prior federal controlled substance conviction was for attempting to possess with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The offenses described in 21 U.S.C. § 841 are specifically designated "career offender predicate offense[s]" in 28 U.S.C. § 994(h). United States v. Baker, 16 F.3d 854, 857 (8th Cir. 1994). Jefferson argues that inchoate § 841 offenses, like his conviction for "attempting" to possess with intent to distribute, are not controlled substance offenses. However, the Sentencing Commission's commentary to § 4B1.2 expressly provides that "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." USSG § 4B1.2 cmt. n.1. In United States v. Mendoza-Figueroa, we held that Application Note 1 "is within the Commission's full statutory authority" and therefore "we must enforce Note 1 in accordance with its terms." 65 F.3d 691, 693 (8th Cir. 1995) (en banc), cert. denied, 516 U.S. 1125 (1996). Jefferson urges us to instead follow contrary decisions in United States v. Winstead, 890 F.3d 1082, 1091-92 (D.C. Cir. 2018), and United States v. Havis, 927 F.3d 382, 386 (6th Cir. 2019) (en banc). But our panel is bound by the en banc decision in Mendoza-Figueroa.

**B. The Premises Enhancement:** The Guidelines increase a defendant's offense level by two if the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." USSG § 2D1.1(b)(12). The evidence at trial established that Jefferson managed his drug trade from the residence he shared with Wendy Stark. During the warrant search, police found bulk quantities of marijuana, individually packaged user quantities of marijuana, scales, packaging consistent with drug trafficking, a loaded firearm, and ammunition. Stark testified that Jefferson directed customers to pick up drugs from the home. Jefferson argues the absence of his name on the lease and the fact he was not controlling access to the home at the time of his arrest demand a contrary finding. We disagree. He was found

sleeping at the home on the morning of the warrant search. His clothes and mail were found in the bedroom. Stark testified he came and went as he pleased. His car was parked in the front and was registered to the residence. This substantial evidence that Jefferson maintained the premises for the purpose of distributing controlled substances clearly outweighs the fact that his name was not on the lease. See Miller, 698 F.3d at 706-07. There was no clear error imposing this enhancement.

**C. The Leader Enhancement:** A two-level increase applies if the defendant "was an organizer, leader, manager, or supervisor" of one or more other participants in a criminal activity, unless a greater increase applies. USSG § 3B1.1(c) & cmt. n.2. The terms "organizer" and "leader" are broadly interpreted. Behera, 223 F.3d at 804. "The key factors in determining management or supervisory authority are control over other participants and organization of the criminal activity." United States v. Pena, 67 F.3d 153, 156-57 (8th Cir. 1995). Jefferson argues the district court clearly erred because Stark's history of using controlled substances and controlled substance convictions was evidence that she was the mastermind of the drug operation. However, Stark described criminal activity in which Jefferson controlled her participation -- instructing her how to package drugs in individual sale quantities, directing her to conduct deliveries, ordering her to install a lock on the smoke room door, having her purchase a firearm and ammunition to protect the drug enterprise, and managing funds derived from and used in the enterprise. This is the conduct of a manager or leader. See, e.g., United States v. Espinoza, 885 F.3d 516, 525-26 (8th Cir.), cert. denied, 138 S. Ct. 2694 (2018), applying the four-level organizer or leader enhancement in § 3B1.1(a).

For these reasons, the judgment of the district court is affirmed.

_____