# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-3412

———————————————

Javier Lopez Gonzalez

*Petitioner*

v.

Monty Wilkinson, Acting Attorney General of the United States[1]

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: October 23, 2020
Filed: March 9, 2021

——————————

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, allows the Attorney General to cancel the removal of certain noncitizens. See id. § 1229b(b)(1). Among the requirements for cancellation eligibility is that the

———————————————

[1]Monty Wilkinson is now Acting Attorney General of the United States and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

noncitizen has not been convicted of any of a number of specified federal offenses. Id. § 1229b(b)(1)(C). To determine whether a petitioner's state conviction should be considered the equivalent of one of these federal offenses, we apply what is known as the categorical approach, which has us compare the statutory elements of the state offense with those of the analogous federal offense to see whether they match.

The question in this case is whether the categorical approach requires a petitioner seeking cancellation of removal to demonstrate both that the state offense he was convicted of is broader than the federal offense *and* that there is a realistic probability that the state actually prosecutes people for the conduct that makes the state offense broader than the federal offense. We conclude that it does not.

I.

Javier Lopez Gonzalez is a native and citizen of Mexico. He entered the United States without legal permission in 1994 and again in 1999 and has been living in the country ever since. In 2001, Gonzalez was arrested in Florida for possession of marijuana. He pleaded nolo contendere and was convicted of possession of twenty grams or less of cannabis under Fla. Stat. § 893.13(6)(b).

On December 19, 2018, the Department of Homeland Security (DHS) initiated removal proceedings against Gonzalez. See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1229a(e)(2)(A). In response, Gonzalez filed an application for cancellation of removal under 8 U.S.C. § 1229b(b)(1), which provides:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien –
>
> > (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

On May 14, 2019, an Immigration Judge (IJ) denied Gonzalez's application, finding both that Gonzalez had not shown he had been a person of good moral character under subsection (B) and that his Florida conviction served as a disqualifying offense under subsection (C). The IJ ordered that Gonzalez be removed from the United States to Mexico.

Gonzalez appealed the IJ's decision to the Board of Immigration Appeals (BIA). In October 2019, the BIA dismissed his appeal, agreeing that the Florida conviction made him ineligible for cancellation. Specifically, the BIA noted that, although the Florida statute criminalized possession of parts of the marijuana plant that are not criminalized under federal law, Gonzalez had not met his burden of showing "a realistic probability that the state would actually apply the language of the statute" to prosecute people solely for possessing these parts of the plant. Because the BIA concluded that Gonzalez was ineligible for cancellation on this basis, it did not address his challenge to the IJ's determination on good moral character.

Gonzalez timely filed a petition for review before this court.

II.

We review de novo legal conclusions of the BIA. Jima v. Barr, 942 F.3d 468, 471–72 (8th Cir. 2019). Though deference is due to the BIA's constructions of ambiguous provisions of the INA, see Dominguez-Herrera v. Sessions, 850 F.3d 411, 415 (8th Cir. 2017), no such deference is warranted when, as here, the BIA's legal analysis is based on its interpretation of Supreme Court precedent. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 642 n.11 (2007) ("Agencies have no special claim to deference in their interpretation of [Supreme Court] decisions."); Owen v. Bristol Care, Inc., 702 F.3d 1050, 1054 (8th Cir. 2013) ("This court, however, is not obligated to defer to the Board's interpretation of Supreme Court precedent under Chevron or any other principle." (cleaned up)); cf. Lorenzo v. Sessions, 902 F.3d 930, 937 (9th Cir. 2018) (reviewing a BIA decision de novo because the BIA was not entitled to deference for its interpretation of Supreme Court guidance on the categorical approach).

The primary issue before us is whether Gonzalez has been convicted of an offense enumerated in subsection (C) of § 1229b(b). In particular, we must determine whether his prior Florida conviction for possession of marijuana is a state offense "relating to a controlled substance," as that term is defined in 21 U.S.C. § 802. 8 U.S.C. § 1182(a)(2)(A)(i)(II); see 8 U.S.C. § 1229b(b)(1)(C) (maintaining that cancellation of removal is unavailable for noncitizens who have "been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title"). If it is, Gonzalez is ineligible for cancellation of removal.

To answer this question, we apply the categorical approach, looking "not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the 'generic' federal definition." Moncrieffe v. Holder, 569 U.S. 184, 190 (2013) (internal quotations omitted). This inquiry involves comparing the elements required for both offenses. See Descamps v. United States, 570 U.S. 254, 261 (2013). "If the relevant statute has the same elements as the 'generic' [federal] crime, then the prior conviction can serve as [a

disqualifying offense].” Id. (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)). If, however, the state crime is broader than the generic federal crime, a conviction for that offense cannot disqualify a petitioner for cancellation of removal. See id. “Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense.” Moncrieffe, 569 U.S. at 190–91 (cleaned up).

In this case, we must compare the federal definition of marijuana to its Florida definition. Under federal law, marijuana is defined as “all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.” 21 U.S.C. § 802(16)(A). Expressly excluded from the federal definition, however, are “the mature stalks of such plant,” products made from the mature stalks, and “oil or cake made from the seeds of such plant.” Id. § 802(16)(B)(ii).

The state statutes underlying Gonzalez’s prior conviction are Fla. Stat. § 893.02(3) and Fla. Stat. § 893.13(6)(b). The latter—the statute under which Gonzalez was convicted—prohibits possession of twenty grams or less of cannabis. Id. § 893.13(6)(b). The former defines “cannabis” under Florida law as “all parts of any plant of the genus *Cannabis*, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin.” Id. § 893.02(3). Fla. Stat. § 893.13(6)(b) specifically exempts “resin extracted from the plants of the genus *Cannabis*.” But unlike the federal statute, neither provision exempts seeds or mature stalks from its definition of marijuana.

The parties agree that, on its face, the Florida statute covers conduct that the federal one does not. While a person found in possession of only mature stalks of a marijuana plant could not be prosecuted under federal law, he could be prosecuted

under Florida law.  Applying the categorical approach, the broader scope of the Florida statute would seem to indicate that a conviction under it cannot serve as a disqualifying offense under § 1229b(b).  Yet the government contends that this is not the end of the inquiry.  To succeed under the categorical approach, the government argues, Gonzalez must further show that there is a "realistic probability that Florida would prosecute an individual for possessing marijuana stalks."  The government asserts that the burden is on Gonzalez to provide evidence, either through the facts of his own case or through other Florida cases, that people in Florida are in fact prosecuted for possessing stalks of marijuana.

The "realistic probability" language comes primarily from two Supreme Court cases: Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007), and Moncrieffe v. Holder, 569 U.S. 184.  In Duenas-Alvarez, where the Supreme Court first introduced and applied its realistic probability language, the petitioner argued that a California statute's definition of "theft" was broader than it appeared as written, such that it would apply to conduct beyond that captured by the "generic" federal definition of theft.  See 549 U.S. at 190–94.  The Court concluded that, to support his against-the-grain reading of the statutory language, the petitioner had to show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  Id. at 193.  Because he had not demonstrated that the state courts in fact interpreted the statute in this way, the Court concluded that the state statute was not broader than the federal offense.  See id. at 193–94.  Moncrieffe reaffirmed this principle, acknowledging that there "must be a realistic probability" that a state statute captures conduct beyond what is criminalized under federal law and describing the realistic probability inquiry as a way to ensure that the categorical approach does not become "an invitation to apply 'legal imagination' to the state offense."  569 U.S. at 191 (cleaned up); see also id. at 194–95 (concluding that because a Georgia controlled substances statute was, on its face, broader than the federal statute, the petitioner had not been convicted of an aggravated felony).

Subsequent case law demonstrates how the realistic probability inquiry comes into play. We applied the framework in United States v. Maldonado, 864 F.3d 893 (8th Cir. 2017), where the defendant made a similar argument to the one made in Duenas-Alvarez about the scope of specific statutory terms. The argument in Maldonado was that the terms "deliver" and "distribute" used in controlled substance statutes from Iowa and Nebraska "could be construed to cover conduct akin to a mere offer to sell drugs," which would go beyond the federal definitions. 864 F.3d at 899. But whether the statutes "could be" so construed was not the correct approach. Instead, the defendant needed to point to specific cases in which Iowa and Nebraska "applied their statutes to such conduct" in order to demonstrate a realistic probability that the statutes had the reach he ascribed to them. Id. at 900. Without this showing, we could not "conclude that the statutory definitions . . . sweep more broadly than the generic federal definition." Id.

In Ortiz v. Barr, 962 F.3d 1045 (8th Cir. 2020), we addressed whether a Minnesota statute qualified as a crime of moral turpitude under federal law. There we noted that "to constitute a crime involving moral turpitude, the offense must require a culpable mental state and reprehensible conduct." Id. at 1048 (cleaned up). Yet "the plain language" of the statute at issue "impose[d] no mens rea requirement," and "an offense that requires general intent only is not considered to be a crime involving moral turpitude." Id. at 1050. Because there was no ambiguity in the statute, we concluded that "there is a realistic probability that Minnesota would apply its obstruction of legal process statute to cases that lacked the requisite degree of scienter necessary" under federal law. Id. at 1051. The realistic probability was evident from the language of the statute itself, so, unlike in Maldonado, there was no need to provide evidence regarding how Minnesota in fact applied it.

As the First Circuit has observed, the Supreme Court's opinion in Duenas-Alvarez makes "no reference to the state's enforcement practices" or to how often prohibited conduct is prosecuted. Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017). Rather, the focus of the realistic probability inquiry is on how a state statute might be *applied*. "The requirement that a defendant show a realistic probability that the

State would apply its statute to conduct that falls outside the generic definition of a crime operates as a backstop when a statute has indeterminate reach, and where minimum conduct analysis invites improbable hypotheticals." Hylton v. Sessions, 897 F.3d 57, 63 (2d Cir. 2018) (internal quotations omitted); cf. Swaby, 847 F.3d at 66 (describing the realistic probability inquiry as a "sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes"). It is in these instances that a petitioner may be required to demonstrate through examples that the statute in question has the reach she ascribes to it. But when the statute's reach is clear on its face, it takes no "legal imagination" or "improbable hypotheticals" to understand how it may be applied and to determine whether it covers conduct an analogous federal statute does not.

Cases the Supreme Court has decided since Moncrieffe support our approach. In Mellouli v. Lynch, 135 S. Ct. 1980 (2015), for example, the Court examined whether a conviction under Kansas law for possession of drug paraphernalia authorized the petitioner's removal under the INA. Id. at 1984. Without relying on or referring to the realistic probability inquiry, the Court applied the categorical approach and held that it did not. The Court reached this conclusion because the Kansas statute did not require any finding that a defendant also possessed a controlled substance, making it broader than the related federal offense. Id. at 1989–91. Because the statute unambiguously applied to possession of drug paraphernalia alone, no additional proof that the petitioner's interpretation of the statute was realistic was required. See also Mathis v. United States, 136 S. Ct. 2243 (2016) (holding, without making reference to the realistic probability inquiry, that because a state burglary statute encompassed more conduct than the generic federal offense, the state offense was broader than the corresponding federal one).

The government's interpretation invites us to conclude that "realistic probability" means that petitioners must prove through specific convictions that unambiguous laws really mean what they say. Not only is this proposal contrary to our understanding of Duenas-Alvarez and Moncrieffe, but it is also at odds with the categorical approach itself, which asks us to focus on the language of the statutory

offense, "not the facts underlying the case." Moncrieffe, 569 U.S. at 190; see also Descamps, 570 U.S. at 261 ("The key [of the categorical approach] . . . is elements, not facts.").[2] We therefore reject the government's interpretation and conclude that, "in applying the categorical approach, state law crimes should . . . be given their plain meaning." Swaby, 847 F.3d at 66.[3]

Here, the plain language of the Florida statute makes clear that it applies to conduct not covered by the federal statute. The federal statute exempts from prosecution the possession of seeds and mature stalks of the marijuana plant. Because the Florida statute under which Gonzalez was convicted offers no such exemption, it is unambiguously broader than the federal law referenced in § 1229b(b). This is all that Gonzalez was required to show under the categorical approach. The BIA thus erred in finding that Gonzalez was ineligible for cancellation of removal on the basis of his Florida conviction.

---

[2]We also note that one of the stated goals of the categorical approach's focus on the elements of a crime, rather than the underlying facts, is to "avoid[] unfairness to defendants" and petitioners, who "may have no incentive to contest what does not matter under the law; to the contrary, [they] may have good reason not to." Mathis, 136 S. Ct. at 2253 (internal quotations omitted). Gonzalez and other similarly positioned Florida defendants would have no incentive, and likely no ability, to request a determination of whether the cannabis they were found with consisted of stems, since such an inquiry would be irrelevant under Florida law. Thus, if Florida has prosecuted people for possessing cannabis consisting in part or in full of just stems, it is unclear whether this fact would be documented.

[3]The majority of our sister circuits have similarly declined to follow the government's framing of the realistic probability inquiry. Swaby, 847 F.3d at 66; Hylton, 897 F.3d at 63–65; Jean-Louis v. Att'y Gen., 582 F.3d 462, 481–82 (3d Cir. 2009); United States v. Aparicio-Soria, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc); United States v. Lara, 590 F. App'x 574, 584 (6th Cir. 2014); Chavez-Solis v. Lynch, 803 F.3d 1004, 1009–10 (9th Cir. 2015); United States v. Titties, 852 F.3d 1257, 1274-75 (10th Cir. 2017); Ramos v. Att'y Gen., 709 F.3d 1066, 1071–72 (11th Cir. 2013). But see United States v. Castillo-Rivera, 853 F.3d 218, 222–24 (5th Cir. 2017) (en banc); United States v. Vail-Bailon, 868 F.3d 1293, 1306–07 (11th Cir. 2017) (en banc).

## III.

The BIA affirmed the denial of Gonzalez's application for cancellation of removal because it concluded that he had not satisfied subsection (C) of § 1229b(b). It did not reach the IJ's finding that Gonzalez had also failed to meet subsection (B). "Because the BIA did not consider the IJ's alternative grounds for denying relief, those issues are not properly before us." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006).

Because the BIA's decision relied on a misinterpretation of the realistic probability inquiry, we grant the petition for review, vacate, and remand for further proceedings consistent with this opinion.

_____